**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SILHOUETTE DESIGN ARCHITECTURE, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. _____ |
| GAMEWAY, INC. | ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Silhouette Design Architecture, Inc., for its complaint against Defendant Gameway, Inc., alleges as follows:

1. Silhouette Design Architecture is a professional services firm providing design and architectural services.

2. Silhouette creates original award-winning designs for airport locations, and original architectural works and technical drawings for commercial projects throughout the country.

3. In 2025, Silhouette created new designs for a video gaming lounge at the Minneapolis-Saint Paul Airport (MSP).

4. Defendant used Silhouette's designs, built the gaming lounge, and is profiting from that design while refusing to pay Silhouette for its design work.

5. Silhouette holds copyrights in both architectural work and the technical drawings for the gaming lounge.

6.     Defendant intentionally did not pay Silhouette for the design services rendered in 2025 and Silhouette did not grant Defendant a license to use its designs.

7.     Defendant, knowingly and intentionally, copied Silhouette's designs and built the video gaming lounge at MSP without authorization.

## PARTIES

8.     Plaintiff Silhouette Design Architecture, Inc. is an Illinois corporation with its principal place of business in Chicago, Illinois.

9.     Defendant Gameway Inc. is an Oregon corporation with its principal place of business in Texas.

## JURISDICTION AND VENUE

10.     There is federal subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*

11.     There is supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because those claims are related to the federal Copyright claims.

12.     There is personal jurisdiction over Defendant in this district because Defendant contacted Plaintiff in Illinois, requested that Plaintiff create the designs at issue from its primary office in Chicago, and Defendant has committed acts of copyright infringement of the designs that Plaintiff created and stored in Illinois and has

- 2 -

otherwise purposefully availed itself of the privilege of conducting activities within this judicial district.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including Defendant's acts of copyright infringement.

**FACTS**

14. Silhouette Design Architecture creates original award-winning designs at airports and is sought out for its originality and creativity.

15. Defendant requested that Silhouette provide its expertise and capabilities to design a new gaming lounge for the Minneapolis-St. Paul International Airport (MSP) after Defendant was awarded space at MSP.

16. In or around January 2025, Silhouette started a lounge design project titled "Portal" lounge located at MSP.

17. Silhouette worked for months in 2025 and its creativity culminated in the original architectural works and technical drawings for the Portal lounge by Silhouette in or about May 2025.

18. The Portal lounge design consists of comprehensive architectural work including spatial arrangements, interior elevations, reflected ceiling plans, floor finish plans, equipment plans, and detailed construction specifications.

19. Silhouette prepared architectural work and detailed technical drawings depicting the Portal lounge design, including an overall design aesthetic as well as storefront elevations showing illuminated portal entry features, recessed fixtures, and mounting details.

20. The architectural work and technical drawings include storefront renderings, approach sketches, side storefront sketches, entry sketches, gaming sketches, interior lounge sketches, and interior renderings depicting the overall design concept.

21. The technical drawings include elevations, seating configurations, lighting details, material and finish specifications, ceiling plans, wall details, specific furniture and equipment placements, and integrated design elements.

22. The Portal lounge architectural work and technical drawings bear the designation "PREPARED BY" with Silhouette Design Architecture's identification.

23. The architectural works and technical drawings embody original expressions in the selection, coordination, and arrangement of spaces, the design of interior elevations, the specification of materials and finishes, the creation of custom details, and the overall aesthetic presentation.

24. Silhouette is the author and owner of all rights, title, and interest in and to the Portal lounge architectural works and technical drawings.

25. On or about June 24, 2026, Silhouette registered the Portal lounge architectural works with the United States Copyright Office under Registration Number VA 2-509-644.

26. On or about July 5, 2026, Silhouette registered the Portal lounge technical drawings with the United States Copyright Office under Registration Number VA 2-510-919.

27. All conditions precedent to bringing this action, including registration of the copyrighted works with the United States Copyright Office, have been satisfied pursuant to 17 U.S.C. § 411(a).

28. On or about June 2025, and continuing thereafter, Defendant copied, reproduced, displayed, and/or created the Portal lounge at the MSP airport based upon Silhouette's copyrighted architectural works and technical drawings without authorization or license.

29. Defendant's infringing activities include copying and constructing the lounge facility based on the Portal lounge design, using the technical drawings to guide construction, publicly displaying the architectural work to the MSP officials, and distributing copies of Silhouette's works.

30. Defendant had access to Silhouette's copyrighted works; and Defendant's copying and use of Silhouette's copyrighted architectural works and technical drawings

was willful, intentional, and done with knowledge that such works were protected by copyright.

31.     A comparison of photos of the completed Portal lounge at MSP and some of Silhouette's designs is attached as **Exhibit A**.

32.     The constructed lounge copies and is substantially similar to Silhouette's copyrighted architectural works and technical drawings.

33.     Defendant's acts of infringement have caused and continue to cause substantial injury and irreparable harm to Silhouette.

<u>COUNT I</u>

**COPYRIGHT INFRINGEMENT OF ARCHITECTURAL WORK**

34.     Plaintiff incorporates the foregoing paragraphs herein.

35.     Silhouette created an original architectural work entitled "Portal Lounge" consisting of the overall form as well as the arrangement and composition of spaces and elements in the design for the MSP airport lounge facility.

36.     The Portal Lounge architectural work is an original work of authorship fixed in tangible form.

37.     The Portal lounge architectural work qualifies as an "architectural work" as defined by the Copyright Act.

38.     Silhouette is the owner of all right, title, and interest in and to the copyright in the Portal lounge architectural work.

39. Silhouette registered the Portal lounge architectural work with the United States Copyright Office in accordance with 17 U.S.C. § 411(a).

40. Defendant, without authorization or license from Silhouette, violated one or more of Silhouette's exclusive rights under 17 U.S.C. § 501(a) by copying, reproducing, distributing, publicly displaying, and/or creating derivative works based upon the Portal lounge architectural work.

41. Defendant is an infringer of Silhouette's copyright in the Portal lounge architectural work within the meaning of 17 U.S.C. § 501(a).

42. Defendant's infringement of Silhouette's copyright in the Portal lounge architectural work was willful and intentional.

43. As a direct and proximate result of Defendant's infringement, Silhouette has suffered and continues to suffer substantial damages, including but not limited to:

    a. Loss of the value of the rights in the copyrighted architectural work;

    b. Loss of licensing fees and royalties; and

    c. Other economic damages to be proven at trial.

44. Defendant's acts of infringement are causing and, unless enjoined, will continue to cause Silhouette Design irreparable injury for which there is no adequate remedy at law.

**WHEREFORE**, Plaintiff prays for entry of judgment in its favor and against Defendant as follows:

- 7 -

A. A declaration that Defendant has infringed Plaintiff's copyrights in the Portal lounge architectural work and technical drawings in violation of 17 U.S.C. § 501;

B. A preliminary and permanent injunction enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with Defendant from further infringing Plaintiff's copyrights in the Portal lounge architectural work and technical drawings, including an order requiring the immediate closure of the Portal lounge;

C. An order requiring Defendant to deliver up for destruction all infringing materials, structures, reproductions, and derivative works;

D. Actual damages suffered by Plaintiff as a result of Defendant's infringement, together with any profits of Defendant attributable to the infringement that are not taken into account in computing actual damages;

E. Pre-judgment and post-judgment interest as provided by law; and

F. Such other and further relief as just and proper under the circumstances.

## COUNT II

### COPYRIGHT INFRINGEMENT OF TECHNICAL DRAWINGS

45. Plaintiff incorporates paragraphs 1 through 33 herein.

46. Silhouette created original technical drawings for the Portal lounge project, including elevations, details, reflected ceiling plans, floor finish plans, fixture plans, equipment plans, furniture schedules, finish schedules, renderings, and construction specifications.

47. The technical drawings are original works of authorship fixed in tangible form.

48. The technical drawings constitute pictorial, graphic, and sculptural works protectable under the Copyright Act.

49. Silhouette is the owner of all right, title, and interest in and to the copyright in the Portal lounge technical drawings.

50. Silhouette registered the Portal lounge technical drawings with the United States Copyright Office in accordance with 17 U.S.C. § 411(a).

51. Defendant, without authorization or license from Silhouette Design, violated one or more of Silhouette's exclusive rights under 17 U.S.C. § 501(a) by copying, reproducing, distributing, publicly displaying, and/or creating derivative works based upon the Portal lounge technical drawings.

52. Defendant is an infringer of Silhouette's copyright in the Portal lounge technical drawings within the meaning of 17 U.S.C. § 501(a).

53. Defendant's infringement of Silhouette's copyright in the Portal lounge technical drawings was willful and intentional.

54. As a direct and proximate result of Defendant's infringement, Silhouette has suffered and continues to suffer substantial damages, including but not limited to:

   a. Loss of the value of the rights in the copyrighted technical drawings;

   b. Loss of licensing fees and royalties; and;

   c. Other economic damages to be proven at trial.

55.     Defendant's acts of infringement are causing and, unless enjoined, will continue to cause Silhouette irreparable injury for which there is no adequate remedy at law.

**WHEREFORE**, Plaintiff prays for entry of judgment in its favor and against Defendant as follows:

A.  A declaration that Defendant has infringed Plaintiff's copyrights in the Portal lounge architectural work and technical drawings in violation of 17 U.S.C. § 501;

B.  A preliminary and permanent injunction enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with Defendant from further infringing Plaintiff's copyrights in the Portal lounge architectural work and technical drawings, including an order requiring the immediate closure of the Portal lounge;

C.  An order requiring Defendant to deliver up for destruction all infringing materials, structures, reproductions, and derivative works;

D.  Actual damages suffered by Plaintiff as a result of Defendant's infringement, together with any profits of Defendant attributable to the infringement that are not taken into account in computing actual damages;

E.  Pre-judgment and post-judgment interest as provided by law; and

F.  Such other and further relief as just and proper under the circumstances.

## COUNT III

### BREACH OF CONTRACT

56.     Plaintiff incorporates paragraphs 1 through 32 herein and pleads this claim in the alternative to Counts 1 and 2.

57.     In 2024, Silhouette worked with Defendant on a request for proposal (RFP) for a potential location at MSP that included a conceptual renderings for purposes of winning the RFP.

58.     Silhouette was paid a modest amount for the RFP that was submitted in February 2024.

59.     Defendant was eventually awarded a space at MSP, in part due to Silhouette's RFP presentation.

60.     Conceptual renderings for RFPs are preliminary and for presentation purposes.  Creating a design to build in a specific space is a separate and more significant undertaking, and, in this instance, the physical space that was awarded was larger and different than during the RFP phase and both the airport and Defendant wanted significant alterations to the concept.

61.     In January 2025, over a year after the RFP and after Defendant attempted to work with other designers to create designs to build the space at MSP, Silhouette was contacted by Emma Walbridge, an owner and authorized agent of Defendant, requesting that Silhouette perform the design work.

62. When Emma Walbridge contacted Silhouette, after the unsuccessful attempts to work with other designers, Defendant was working under a compressed timeline and pressed Silhouette to start work.

63. Defendant understood and knew in requesting that Silhouette perform the design work in 2025 that Silhouette would charge for the services requested and for the work that was being performed.

64. Defendant's representatives, including Emma Walbridge, orally and in correspondence requested that Silhouette provide professional services to design what became the Portal lounge.

65. Silhouette's personnel spent months working with Emma Walbridge and Defendant's representatives on the Portal Loung project.

66. During those months, Defendant's representatives repeatedly reached out and contacted Silhouette to request more work on the Portal lounge designs.

67. Defendant was aware that Silhouette was putting significant effort into the Portal design, and Defendant continued to request that work be performed but did not ever request a formal written cost proposal prior to requesting that work be performed.

68. Silhouette performed the work requested by Defendant, and after significant effort and months of work, Silhouette finished work on the Portal design.

69. Silhouette sent Defendant a flat fee charge for the design work, explaining that if the work performed was charged on an hourly basis, the charges would be significantly higher because of the effort that Silhouette invested.

70. Eventually, after dangling the possibility of payment for months, Defendant refused to pay for the 2025 design work, and falsely claimed that the 2024 RFP work and payment for the RFP work in 2024 covered the months of work Silhouette invested in 2025.

71. Plaintiff and Defendant had an agreement for the performance of design work in 2025, and that agreement is valid and enforceable.

72. Plaintiff performed the agreement by performing the design work.

73. Defendant breached the agreement by refusing to compensate Plaintiff.

74. Plaintiff has suffered injuries for the non-payment of work.

**WHEREFORE**, Plaintiff prays for entry of judgment in its favor and against Defendant in an amount in excess of $50,000.00, plus prejudgment interest from December 23, 2025 at 5% and costs and expenses, and for such other and further relief as just and proper under the circumstances.

## COUNT IV

## UNJUST ENRICHMENT

75.     Plaintiff incorporates paragraphs 56 through 71 herein and pleads this claim in the alternative to Counts 1, 2, and 3.

76.     Defendant voluntarily and knowingly accepted a valuable benefit in the form of services for the performance of work.

77.     It would be unjust for Defendant to retain the benefits of services by Plaintiff without compensating Plaintiff.

**WHEREFORE**, Plaintiff prays for entry of judgment in its favor and against Defendant in an amount in excess of $50,000.00, plus prejudgment interest from December 23, 2025 at 5% and costs and expenses, and for such other and further relief as just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**PLAINTIFF SILHOUETTE DESIGN ARCHITECTURE, INC.,**

By: /s/Christopher Carmichael
One of its Attorneys

Christopher W. Carmichael
Lindsey D.G. Dates
David K. Katahira
**HENDERSON PARKS, LLC**
140 S. Dearborn St., Suite 1020
Chicago, IL 60603
Tel: (312) 262-2900
ccarmichael@henderson-parks.com
ldates@henderson-parks.com
dkatahira@henderson-parks.com

- 14 -